**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LORNA CHITWOOD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:06CV1236** |
| | ) | |
| **JEFFERSON PILOT FINANCIAL** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Motion for Summary Judgment filed by

Defendant Jefferson Pilot Financial Insurance Company ("Defendant") and the Motion for Summary

Judgment filed by Plaintiff Lorna Chitwood ("Plaintiff"). Doc. 22 and Doc. 24. The parties have

filed responsive pleadings. The parties have consented to the jurisdiction of the undersigned United

States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 17.

## UNDISPUTED FACTS [1]

**A.      Procedural History**:

Plaintiff was employed by National Association of Independent Fee Appraisers, Inc.,

("NAIFA"). Defendant's records state that Plaintiff's job as an accounting manager required that she

"frequently sit"; that she occasionally stand, walk, balance, stoop, kneel, crouch, crawl, reach/work

overhead, push, pull, lift, and carry; that she occasionally was required to lift/carry a file box weighing

up to twenty-five pounds and to climb twenty stairs; and that her job was a primary sedentary

occupation. Tr. 25.

---

[1]      The facts are undisputed unless otherwise stated.

NAIFA offered its employees a long term disability plan (the "Plan"), which constituted an "employee welfare benefit plan" within the meaning of Employees Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1). Plaintiff qualified as a participant in the Plan within the meaning of ERISA. NAIFA arranged for benefits under the Plan to be provided solely through Group Long Term Disability Policy No. 10025705 (the "Policy"). The Policy was issued and administered by Defendant.

On July 1, 2004, Plaintiff stopped working for NAIFA, alleging that she was totally disabled due to irritable bowel syndrome ("IBS"). In December 2004, Plaintiff filed a claim for long term disability ("LTD") benefits with Defendant, Claim No. 1040184728. In her application for LTD benefits Plaintiff stated that she has pain in her leg when walking or climbing stairs; that she is unable to control her bowels; that she has pain and swelling in her hand; and that all of these conditions had become worse in the last year. Tr. 62. Defendant's worksheet states that a representative completed an initial call to Plaintiff and that Plaintiff advised that she has IBS; that she had it for twenty years; that she cannot drive "due to having an accident on herself"; that she can have "3-5 or 10 accidents on herself"; and that she was taking medication but was not receiving treatment. Tr. 277.

In a letter dated February 17, 2005, Defendant denied Plaintiff's claim for LTD benefits. Through her attorney, on May 6, 2005, Plaintiff filed an appeal of her denial for LTD benefits. Tr. 90-92. In a letter dated May 25, 2005, Defendant acknowledged receiving Plaintiff's appeal and stated that "it may be in [Plaintiff's] best interest to have her physician(s) forward copies of their actual medical records **covering the period from December 31, 2004 to the present.** These records would be necessary in order to assess [Plaintiff's] work capacity after the end of her elimination period under the policy and to the current date." Tr. 88 (emphasis in original). In a letter dated June 20, 2005, Plaintiff's attorney informed Defendant that Plaintiff "has been unable to seek additional

medical treatment due to lack of finances. Accordingly, we have nothing further to submit at this time." Tr. 85.

In a letter dated July 6, 2005, Defendant informed Plaintiff that it was sending her file for "medical review." Tr. 84. In this letter Defendant requested that if Plaintiff had applied for Social Security disability benefits, that she provide Defendant with a copy of the approval or denial notice from the Social Security Administration. Tr. 84. Defendant denied her appeal in a letter dated July 18, 2005. Tr. 78-80.

Plaintiff requested review of this denial on November 7, 2005 and Defendant denied her review on December 28, 2005, stating that Plaintiff had exhausted all of her administrative remedies.

Pursuant to ERISA, § 1132(a-m), Plaintiff filed the Complaint in the matter under consideration on August 16, 2006.

B.      **Plaintiff's Medical History as Documented by the Administrative Record:** [2]

Plaintiff sought treatment for intermittent diarrhea and abdominal pain on March 25, 2004, from Sajid H. Ansari, M.D., a gastroenterologist. Dr. Ansari's impression on this date was irritable bowel syndrome and chronic heartburn. Tr. 103. Dr. Ansari reported on March 25, 2004, that Plaintiff was alert, oriented, and in no apparent distress; that her abdomen was "obese with positive bowel sounds" and "flat, soft, non-distended, non-tender, no guarding or rebound"; and that there were no abdominal masses. Dr. Ansari's impression on this date included intermittent diarrhea and abdominal pain and that Plaintiff's symptoms were suggestive of underlying IBS. Tr. 102-103.

Dr. Ansari's records further reflect that on March 31, 2004, he performed an esophagogastroduodenoscopy with biopsy and a colonoscopy with biopsy on Plaintiff. Dr. Ansari's impression was "[e]ssentially normal colonoscopy status post random biopsies to rule out mucosal

---

[2]      Plaintiff's medical history is provided in the Administrative Record.

disease given [Plaintiff's] complaints of diarrhea," mild gastritis and gastric erosion, and "[p]ossible esophagitis status post biopsy."  Dr. Tr. 110, 116-117.

Dr. Ansari's records reflect that he saw Plaintiff on April 13, 2004, on which date Plaintiff reported that increased stress on the job increased her diarrhea and that "[s]he is changing jobs soon and will be under a more structured program, and she is worrying about how she will function with the diarrhea." Tr. 110.

Dr. Ansari's records state that he saw Plaintiff on May 4, 2004.  Dr. Ansari reported on this date that Plaintiff's colonoscopy was normal; that biopsies were negative; and that he prescribed Lotronex for Plaintiff's diarrhea but Plaintiff had to stop taking this medication because she became constipated.  Tr. 108.

Dr. Ansari reported on May 27, 2004, that Plaintiff's diarrhea was "very difficult to control, but that [he] suspect[ed] she ha[d] underlying irritable bowel syndrome given her worsening symptoms with stress, the diarrheal symptoms, and abdominal pain."  Dr. Ansari further reported on this date that Plaintiff's colonoscopy was normal; that an "EGD showed only gastritis"; that Dr. Ansari had exhausted all of the therapeutic options for managing Plaintiff's diarrhea; and that Plaintiff should return in three to four weeks for a follow-up visit.  Tr. 106.

On June 17, 2004, Dr. Ansari reported that Plaintiff had chronic intermittent diarrhea, which was very difficult to control; that he suspected that "this is all underlying IBS"; that Plaintiff had tried medications without any improvement in her symptoms; that her condition had reached a point that it interfered with Plaintiff's daily activities and work; that Plaintiff had become "quite anxious and dramatic during our interview"; that Elavil caused Plaintiff to be tired; and that Lotronex caused Plaintiff to become "very constipated."  Dr. Ansari further reported on June 17, 2004, that therapies for Plaintiff's symptoms had been exhausted; that Plaintiff had requested sick leave; and that he was

placing Plaintiff on sick leave until she could see Charlene M. Prather, M.D., with the Department of Internal Medicine, Division of Gastroenterology and Hepatology, SLU Care, for further evaluation. Tr. 105.

Plaintiff was seen by Robert Kunkel, M.D., on July 12, July 22, August 10, October 25, and December 30, 2004. Tr. 231-235. On July 12, 2004, Plaintiff reported to Dr. Kunkel that she had "lots of accidents." Tr. 235. On August 10, 2004, Plaintiff reported that her IBS symptoms were uncontrolled and that she had ten unpredictable bowel movements a day. Tr. 233.

After seeing Plaintiff for a consultation Dr. Prather reported on September 28, 2004, that Plaintiff said she had chronic intermittent diarrhea for the previous thirty years, with worsening symptoms during the previous five years; that she ranged from three to ten bowel movements a day with extreme urgency; that she experienced abdominal pain which is relieved with defecation; that she frequently defecated on herself while in public and has "dramatically altered her lifestyle because of this"; and that due to her incontinence she brings changes of clothing when she leaves home. Dr. Prather further reported on September 28, 2004, that her examination of Plaintiff was "overall unremarkable" and that "[o]n rectal examination, she actually had quite normal sphincter tone and solid stool in the vault." Dr. Prather noted that Plaintiff had a prior normal upper endoscopy and colonoscopy with biopsy. Dr. Prather's impression included chronic severe diarrhea. In regard to this condition, Dr. Prather stated that while it may be related to irritable bowel syndrome, there were "other differential diagnostic possibilities to be considered. The impression also included gastroesophageal reflux disease with reflux esophagitis endoscipically, which Dr. Prather noted was "currently, treated with good symptomatic control with Aciphex. Further, the impression included a history of cervical cancer, constipation secondary to Lotronex, and "[s]ignificant perineal damage with childbirth delivery, increasing [Plaintiff's] risk for anal sphincter dysfunction." Dr. Prather's

recommendations included follow-up stool studies, evaluation for small bowel bacterial overgrowth, laboratory studies, small bowel follow-through, and, "if an etiology for an improvement in [Plaintiff's] diarrhea [was] not found, ... an anorectal manometry and anal ultrasound to better treat the bowel incontinence." Tr. 69-70.

In a letter to Dr. Ansari dated September 28, 2004, Dr. Prather stated that pursuant to Dr. Ansari's request she was providing a second opinion regarding Plaintiff's chronic diarrhea. In this letter Dr. Prather stated, among other things, that Plaintiff had chronic intermittent diarrhea for the past thirty years and that it "has been much worse in the past five years." Dr. Prather's impression and recommendations in the letter to Dr. Ansari are as stated above in notes of this same date. Tr. 147-48.

Dr. Prather reported to Robert Kunkel, M.D., on November 30, 2004, that Plaintiff's laboratory studies, including CBC, metabolic profile, C-reactive protein, folate, B12, ANA lactoferrin, stool fat, ova and parasite, Giardia antigen, stool culture for enteric pathogen, and glucose breath test for bacterial overgrowth were all negative. Dr. Prather further reported that Plaintiff's serum IgA was normal. Dr. Prather reported on this date that Plaintiff's symptoms from IBS were "quite severe and although she manages extremely well, she is not able to work and is not able to travel outside the home because of this." Dr. Prather's recommendations on November 30, 2004, included that Plaintiff take Imodium to prevent loose stools, FiberCon to prevent constipation from the Imodium, "[i]f not improved, trial of Lotronex," and "[t]o complete the evaluation, ...the small bowel follow through." Tr. 141.

A letter from Dr. Ansari to Dr. Prather, dated December 10, 2004, states that Dr. Ansari saw that Dr. Prather was considering a trial of Lotronex for Plaintiff and that Dr. Ansari wanted to advise Dr. Prather that this medication made Plaintiff constipated. Tr. 122.

Defendant's telephone notes, dated January 13, 2005, state that an initial call to Plaintiff was completed; that Plaintiff advised that she cannot walk or drive due to "having an accident on herself"; that "she can either have 3-5 or 10 accidents on herself"; and that she was receiving Social Security disability. Tr. 18-19.

Defendant's telephone notes of February 9, 2005, state, among other things, that Plaintiff stated that she had IBS since 1986; that when her problem started her doctor told her that she should try medication and learn to deal with it; and that "finally after years of uncontrollable accidents, she decided to change doctors"; that "they still do not really know why she is having these prob[lems]." Tr. 20.

In a letter dated, March 30, 2005, Dr. Kunkel states that he treated Plaintiff since July 2004; that Plaintiff suffers from IBS, has symptoms of sudden/unpredictable bowel movements associated with encopresis; that Plaintiff's severe, chronic diarrhea, stooling, and incontinence render her unable to sit continuously; that job stress, movement, and the unpredictable nature of the work environment worsens Plaintiff's symptoms; that Plaintiff "would not be expected to perform well under an eight hour work environment"; that he "highly doubt[s] that [Plaintiff] would be able to perform duties in excess of 1-2 hours before her IBS condition would flare up and she would suffer uncontrolled diarrhea or fecal incontinence"; that Plaintiff's past medical history of uterine cancer, cervical cancer, and right femoral bypass worsen Plaintiff's underlying IBS; that Plaintiff suffers uncontrollable, unexpected diarrhea episodes and must change her clothes often during the day and night because of fecal incontinence; that "it is doubtful Plaintiff can grip/lift greater than 25 pounds"; that it is doubtful that Plaintiff can "operate push/pull carts or wheeled stations"; and that Plaintiff is "unsuited for employment in a structured work environment." Tr. 123-25.

In a letter dated June 20, 2005, pursuant to a request from Defendant for further medical records, Plaintiff's counsel stated that Plaintiff had not sought medical treatment since December 31, 2004 "due to lack of finances." Tr. 85.

On July 7, 2005, pursuant to a request from Defendant, N. Fay, RN, reviewed Plaintiff's medical records and reported that:

> Overview: Per MDA no specific tests give a definite diagnosis for IBS. Consequently, numerous diagnostic tests and procedures are performed in an effort to rule out other disease states and prove that a more serious underlying condition does not exist. Irritable bowel syndrome is a diagnosis of exclusion. PT's tests and studies thus far have been negative. File indicates that PT has been diagnosed with this condition for over 30 years and in that interim has been able to graduate from college and maintain gainful employment. The med file does not show any significant change in her condition that would preclude her from continuing to perform a sedentary occ.

> Summary: Medical documentation does not support restrictions and limitations that preclude PT from performing a sedentary occ.

Tr. 25.

On December 23, 2005, pursuant to a request by Defendant, Teresa Powers, R.N., reviewed Plaintiff's medical records and reported as follows, in relevant part:

> It would appear that the medical diagnostic findings on the file as well as report of symptoms would not support the need for R&L's that would preclude this claimant from performing in a sedentary or light occupation. ... The medical to the date of December 30, 2004, does not continue to support that her symptoms were unmanageable or uncontrollable as evidenced by documentation of number of stools per day or consistency of stools. It would appear that there are adult protective wear that could be worn to protect this claimant from having to change clothes if she would have incontinence of stool. I do not see evidence of further studies as noted in the evaluation on September 2004 indicating anorectal manometry or anal ultrasound to treat the incontinence.

Tr. 23-24.

**C.      Decision of the Social Security Administration:**

Plaintiff applied for and received Social Security disability benefits. An Administrative Law Judge ("ALJ") awarded Plaintiff Social Security disability benefits by a decision dated October 19, 2005. This decision is a part of the Administrative Record.[3] Tr. 72-77. The ALJ considered Plaintiff's medical records including the records of Dr. Kunkel and Dr. Prather. In particular, the ALJ considered Dr. Kunkel's letter of March 30, 2005. The ALJ found that Plaintiff's impairments including IBS and unpredictable bowel movements, would cause her to have unscheduled interruptions and accidents that would leave her unable to sustain work-related physical activities in a work setting on a regular and continuing basis and that she needs to be in close proximity to a bathroom at all times. The ALJ considered that Plaintiff had four years of college. The ALJ found that Plaintiff's past relevant work included accounting manager, caretaker, forklift operator, and a line worker, and that Plaintiff does not have transferrable skills. The ALJ found, therefore, that Plaintiff was disabled within the meaning of the Social Security Act. Tr. 72-76.

## D.    Defendant's Letter Initially Denying Benefits Under the Plan:

Upon initially denying Plaintiff benefits on February 17, 2005, Defendant reviewed Plaintiff's medical records. Defendant stated that Plaintiff indicated that she had not received medical treatment since she saw Dr. Prather on December 10, 2004; that medical documentation indicated that testing results were within normal limits; and that Plaintiff's treatment consisted of medication which was "considered conservative in nature and would not interfere with the performance of [her] occupational duties." Defendant further stated that, "[w]hile we do understand the inconvenience of [Plaintiff's] condition, the medical documentation ... fails to support [her] inability to perform the

---

[3]    Defendant admitted in response to Plaintiff's Statement of Undisputed Facts that the ALJ's decision is a part of the Administrative Record. Doc. 27, Def. Resp. Pl. Facts, ¶ 4.

main duties of her Own Occupation as an Accounting Manager by the end of [her] Elimination Period." Tr. 155-56.

**E.     Plaintiff's First Appeal:**

In its letter of July 18, 2005, denying Plaintiff's First Appeal, Defendant considered the definition of totally disabled as defined under the Plan.  Defendant also stated that it considered information from her employer regarding the requirements of her job; that her job was primarily sedentary; that Plaintiff's medical history reflected that she had been diagnosed with IBS; that "[n]o specific tests give a definitive diagnosis" for IBS; and that she had cervical and uterine cancer in 1997 followed by radiation treatments.  Defendant further stated that it considered Dr. Prather's records, lab studies and stool cultures which were negative and a normal small bowel series; that IBS is a diagnosis of exclusion; that "[a]ll tests and studies thus far have been negative"; that Plaintiff "has been diagnosed with this condition for thirty years and has been able to maintain gainful employment during this period of time"; that "the medical records do not show any significant change in her condition that would preclude her from continuing to perform the duties of her occupation"; and that, therefore, it was "unable to overturn the original denial of [Plaintiff's] claim for Long Term Disability benefits."  Tr. 78-80.

**F.     Plaintiff's Second Appeal - Defendant's Final Denial of Benefits:**

In its decision of December 28, 2005 Defendant considered the definition of totally disabled under the Plan.  Tr. 59.  Defendant further considered that after the completion of the elimination period to receive benefits Plaintiff must be "totally disabled," "**under the care of a physician**," and "submit[] proof of continued disability and physician's care to the company upon request." Tr. 59 (emphasis in original).

Defendant continued to state in its determination of December 28, 2005:

> In our review we noted [Plaintiff's] last day worked was 7/1/04 due to irritable bowel syndrome (IBS), with complaints of abdominal pain and diarrhea. Benefits have not been paid as the medical records failed to support a total disability that would render her incapable of performing the main duties of her occupation. Restrictions and limitations are noted by her treating physician as unable to work due to pain, frequent bowel movements and no lifting. He also notes her prognosis for recover as "never" and expected return to prior level of functioning as "no."

Tr. 60.

Defendant also considered that Plaintiff had a thirty-year history of IBS; that she had uterine and cervical cancer; that she had right femoral artery bypass and surgery on the fingers of her right hand; and that IBS is a diagnosis of exclusion. Tr. 60. Defendant further considered Dr. Prather's evaluation of September 28, 2004 and that there is no record of further follow up with Dr. Prather after that date. Defendant considered Dr. Kunkel's report that a physical examination had normal findings and that "there is no specific information about the number of stools, the urgency of stools, or consistency of the stools on that date." Tr. 60. Defendant concluded as follows:

> In summary, it would appear that the medical diagnostic findings in the file as well as report of symptoms would not support the need for restrictions and limitations that would preclude Ms. Chitwood from performing in a sedentary or light occupation. Based on the fact that IBS has been a chronic illness with Ms. Chitwood, the medical documentation that we have received to the date of December 30, 2004 does not support that her symptoms were unmanageable or uncontrollable as evidenced by documentation of number of stools per day or consistency of stools. It would appear that there are adult protective wear that could be worn to protect Ms. Chitwood from having to change clothes if she were to have incontinence of the bowel. There is no evidence of further studies as noted in the evaluation on September 28, 2004 indicating anorectal manometry or anal ultrasound to treat the incontinence.

Tr. 59-60.

Defendant advised Plaintiff that all appeal rights under the Policy were exhausted and that Plaintiff had the right to pursue litigation. Tr. 61.

11

**APPLICABLE PLAN PROVISIONS**

1.      "Elimination period" is defined as "180 days of disability due to the same or related Sickness or Injury, which must be accumulated within a 360 day period." Tr. 30.  Further "elimination period" is the number of days of disability during which no benefit is payable. Tr. 33.

2.      "Own occupation period" is defined as "a period beginning at the end of the Elimination Period and ending at the end of the Maximum Benefit Period for the Insured Employees. Tr. 30.

3.      "Regular care of a physician" or "regular attendance of a physician" is defined as follows:

> 1.      personally visits a Physician, as often as medically required according to standard medical practice to effectively manage and treat his or her disabling condition; and
> 2.      receives medically appropriate treatment, by a Physician whose license and any speciality are consistent with the disabling condition.

Tr. 36.

4.      The Plan provides that "[a]t anytime while a claim is pending," Defendant may have the insured individual examined by a physician of Defendant's choice.  Tr. 39.

5.      Total disability or totally disabled are defined as follows:

> 1.      During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform the material and substantial duties of his or her regular occupation.
> 2.      After the Own Occupation Period, it means that due to an injury or Sickness the Insured Employee is unable to perform the material and substantial duties of any gainful occupation which his or her training, education or experience will reasonably allow.

Tr. 47.

**LEGAL FRAMEWORK FOR JUDICIAL REVIEW OF DENIAL OF BENEFITS UNDER AN ERISA PLAN**

The standard of review applicable to evaluation of an administrator's decision under an ERISA plan is dependent upon whether the plan grants discretionary authority to the administrator.

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The Eighth Circuit held in McKeehan v. Cigna Life Insurance Co., 344 F.3d 789, 792 (8th Cir. 2003), as follows:

> In reviewing the denial of ERISA benefits, the reviewing court applies a deferential abuse-of-discretion standard if the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." In all other cases, the plan administrator's decision is reviewed de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). McKeehan argues that the district court erred in applying the deferential abuse-of-discretion standard to LINA's denial of benefits. Whether an ERISA plan confers discretionary authority is a question we review de novo. See Walke v. Group Long Term Disability Ins., 256 F.3d 835, 839 (8th Cir.2001).

"[A]n express grant of discretion" triggers "the deferential abuse-of-discretion standard of review for benefit decisions by the Plan sponsor." Id. (citing Walke v. Group Long Term Disability Ins., 256 F.3d 835, 839 (8th Cir. 2001)). See also Administrative Committee of Wal-Mart Stores Inc. v. Gamboa, 479 F.3d 538, 541 (8th Cir. 2007) ("[T]he plan administrator [has] complete discretion to interpret the terms of the Plan. Accordingly, we are limited to reviewing the Administrative Committee's interpretation of the Plan for an abuse of discretion."). Indeed, the "explicit discretion-granting language" is required "to trigger the ERISA deferential standard of review." McKeehan, 344 F.3d at 793. Further, "an ERISA plan may authorize the plan sponsor to delegate the sponsor's discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. (citing 29 U.S.C. § 1105(c)(1); 29 C.F.R. § 2509.75-8, at FR-12) (other citations omitted).

In regard to interpretation of a plan under which the administrator has the discretion requisite to trigger the abuse of discretion standard, the district court may not "substitute a different, though also reasonable, interpretation that could have been made." Wal-Mart, 479 F.3d at 541-42. "'In applying an abuse of discretion standard, [a court] must affirm if a reasonable person could have reached a similar decision, given the evidence before [it], not that a reasonable person would have

reached that decision.'" Id. at 542 (quoting Groves v. Metro. Life Ins. Co., 438 F.3d 872, 875 (8th Cir.2006) (internal quotation marks omitted). "'A plan administrator's decision is reasonable if a reasonable person could have, based upon the same evidence, reached a similar decision.... If the plan administrator's decision offers a reasonable explanation, the decision should not be disturbed even if another reasonable, but different, interpretation may be made.'" Smith v. United Television, Inc., 474 F.3d 1033, 1035 (8th Cir. 2007) (quoting Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1199 (8th Cir. 2002) (internal quotations and citation omitted). Thus, "a district court cannot overrule a plan's decision simply because it disagrees with that decision." Id. at 1035-36 (citing Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1180 (8th Cir. 2001)). See also Schatz v. Mutual of Omaha Ins. Co., 220 F.3d 944, 949 (8th Cir. 2000) ("Provided the decision 'is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made.'") (quoting Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997)).

To determine whether there was an abuse of discretion upon denying of benefits under an ERISA plan a court must ask wether the decision is "supported by substantial evidence, meaning more than a scintilla but less than a preponderance." Schatz, 220 F.3d at 949.

Further, in regard to interpreting the language of an ERISA plan the Eighth Circuit holds:

"We look to the law of trusts when interpreting ERISA plan documents." Hughes v. 3M Retiree Med. Plan, 281 F.3d 786, 790 (8th Cir.2002). We interpret the terms of a written arrangement by considering "'the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible.'" Id. (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). We thus begin with the language of the Plan. An interpretation that conflicts with the plain language of a health and welfare plan is an abuse of discretion, see Erven v. Blandin Paper Co., 473 F.3d 903, 909 (8th Cir.2007) ... . Where a plan contains uncertain terms, this court will not disturb the plan administrator's interpretation of the plan, as long as it is reasonable. Riddell v. Unum Life Ins. Co. of Am., 457 F.3d 861, 864-65 (8th Cir.2006). Our reasonableness review of a plan administrator's interpretation is informed by the Finley factors, see Finley v. Special Agents Mut. Benefit Ass'n, 957 F.2d 617, 621 (8th Cir.1992), which guide us to consider whether the interpretation

contradicts the plan's clear language, whether the interpretation renders any plan language internally inconsistent or meaningless, whether the administrator has interpreted the words at issue consistently, whether the interpretation is consistent with the plan's goals, and whether the interpretation conflicts with any substantive or procedural requirements of ERISA. Riddell, 457 F.3d at 864.

Wal-Mart, 479 F.3d at 542. See also Smith, 474 F.3d at 1035 (holding that Finely v. Special Agents Mut. Ben. Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992), provides that reasonableness of a plan administrator's decision to deny benefits requires consideration of, among other things, "whether the interpretation is consistent with the plan's goal's" and whether the interpretation renders any plain language meaningless or internally inconsistent").

In making a determination as to whether a denial of benefits under an ERISA plan is supported by substantial evidence a reviewing court may "'consider only the evidence that was before the administrator when the claim was denied.'" Schatz, 220 F.3d at 949 (quoting Farley v. Arkansas Blue Cross and Blue Shield, 147 F.3d 774, 777 (8th Cir. 1998)).

In regard to a situation where a claimant is granted Social Security disability benefits but denied benefits under an ERISA plan, the Eighth Circuit has recognized that such an outcome can be "the product of discretionary judgment applied to a record containing conflicting evidence as well as the result of the somewhat different standard governing social security and ERISA determinations." Schatz, 220 F.3d at 950 n.9 (citing Conley v. Pitney Bowes, 176 F.3d 1044, 1049-50 (8th Cir.1999) (holding that elaborate schemes mandated in social security context to evaluate claimant's subjective complaints of pain and fitness for particular jobs need not be "import[ed] wholesale, into what is essentially a private-law area")).

**STANDARD FOR SUMMARY JUDGMENT**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Id. at 256.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. With these principles in mind, the court turns to an analysis of the pending motions. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## DISCUSSION

In support of its decision not to grant Plaintiff benefits under the Plan Defendant states that Plaintiff was able to work for thirty years, despite her having IBS; that Plaintiff has submitted no objective diagnostic evidence to support her claim that her condition has worsened to the point that she is unable to work; that two separate medical reviews conducted by Defendant concluded that Plaintiff is capable of performing her occupation; and that the Social Security Administration's decision to grant Plaintiff Social Security Disability benefits is not binding on Defendant. Plaintiff argues that Defendant's decision to deny her benefits is not supported by substantial evidence; that according to the Plan Defendant was required to obtain a vocational assessment to determine whether Plaintiff could continue to perform her job; that Defendant's determination that Plaintiff could work with adult protective wear was not made with the "reflection and judgment" required for a disability determination under ERISA; that although Plaintiff did not receive treatment since December 30, 2004, for her IBS, further physician care would not have improved her symptoms; and that, therefore, Plaintiff's not being under the ongoing care of a physician can not be the basis for a denial of benefits. In response Defendant contends that none of the sources relied upon by Plaintiff in her Memorandum were part of the administrative record.

In the matter under consideration the parties do not dispute that the Plan gives the administrator discretionary authority to determine eligibility. As such, upon reviewing Defendant's decision to deny Plaintiff disability benefits under the Plan an abuse of discretion standard is applicable. See Firestone, 489 U.S. at 115; Wal-Mart, 479 F.3d at ; McKeehan, 344 F.3d at 792. Thus, not only must this court be deferential to Defendant's determination but in order for it to find in favor of Plaintiff on summary judgment, the court must find Defendant's decision unreasonable

17

under the Plan. See Wal-Mart, 479 F.3d at 541-42. The court can not find in Plaintiff's favor merely because it disagrees with Defendant's decision. See id.

Upon reaching the conclusion that Plaintiff is not totally disabled within the meaning of the Plan Defendant relied upon Plaintiff's medical records. In particular, upon initially denying Plaintiff benefits Defendant acknowledged the "inconvenience" of Plaintiff's condition but concluded that she could perform the duties of her job as her treatment consisted only of taking medication. In particular, upon denying Plaintiff's appeal Defendant considered that Plaintiff had IBS for thirty years and had worked during this period and that there was no evidence that her condition had worsened over time. In particular, upon denying Plaintiff's final appeal, Defendant stated that the medical documentation does not support a conclusion that Plaintiff's symptoms are "unmanageable" or "uncontrollable" and concluded that Plaintiff could use "adult protective wear" to accommodate incontinence. Further, upon denying benefits pursuant to Plaintiff's second appeal Defendant emphasized that the Plan required that Plaintiff be under the care of a physician.

First, the court is cognizant of the fact that the decision of the Social Security ALJ is not controlling in this matter. See Schatz, 220 F.3d at 950 n.9. Because of the discretion afforded the Plan administrator and because of the procedural requirements of the Social Security Act, Defendant's denial of benefits to Plaintiff is not necessarily unreasonable despite her receiving benefits from the Social Security Administration. It is not insignificant, however, that for a decision of a Social Security ALJ to be affirmed by a federal court the ALJ's decision must be supported by substantial evidence, the same standard which is applicable in the matter under consideration. See e.g., Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002) ("Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."); Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996) ("[W]e may

not reverse merely because substantial evidence exists for the opposite decision"); Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"); Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988); Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). Further, the ALJ's decision granting Plaintiff Social Security benefits reflects that the evidence which was before Defendant was likewise before the ALJ, including Dr. Kunkel's letter of March 30, 2005. Additionally, Defendant requested that Plaintiff provide it with the ALJ's decision.

Second, the court is cognizant that it should only consider evidence that was before Defendant's Plan administrator upon denial of Plaintiff's claim for disability benefits. See Schatz, 220 F.3d at 949. Defendant asserts that Plaintiff submits evidence to this court which was not submitted to Defendant during the processing of Plaintiff's claim. Defendant, however, has not specified what this evidence is. To the extent that Defendant suggests that it is not proper for this court to consider Plaintiff's subjective complaints because they are not documented, it is proper for this court to consider subjective complaints reflected in the medical records which are part of the administrative record. In any case, upon making its determination in the matter under consideration this court will only rely upon those matters identified in the Administrative Record.

Third, to the extent that Defendant contends that the medical records do not support Plaintiff's claim regarding the severity of her IBS, Defendant acknowledged that IBS is a diagnosis of elimination. In other words, *there is no test for IBS*. Thus, Defendant's position suggests that no person with IBS, no matter how severe, can ever qualify for benefits under the Plan. Plaintiff's description of her symptoms to her doctors as well as to Defendant's representatives, moreover, is consistent with the claim she makes that she defecates uncontrollably up to ten times a day. The record reflects that in July 2004 Plaintiff told Dr. Kunkel she had lots of accidents; that in August

2004 she told Dr. Kunkel she had ten unpredictable bowel movements a day; and that in September 2004 she told Dr. Prather that she frequently defecated upon herself in public. Defendant's records which are part of the administrative record reflect that Plaintiff told Defendant's representative in January 2005 that she can have up to ten accidents a day. Thus, the court finds that no reasonable person would have relied on negative test results and/or on the fact that test results did not show that Plaintiff had a condition which would result in her not having control over her bowels. See Wal-Mart, 479 F.3d at 542. Further, the court finds that substantial evidence on the record does not support Defendant's conclusion in this regard. See Schatz, 220 F.3d at 949.

Fourth, to the extent Defendant contends that Plaintiff had IBS for thirty years and doctor's records do not reflect that Plaintiff's condition has become worse, Dr. Ansari's records of June 2004 reflect that Plaintiff's condition had reached a point where it interfered with her daily activities and work and that he placed her on sick leave. Dr. Ansari's records of September 2004 also reflect that Plaintiff's diarrhea had become much worse. Most significantly, Plaintiff had uterine and cervical cancer with radiation in 1997 and Dr. Kunkel opined that her IBS had worsened as a result. The court finds, therefore, that Defendant's reliance on Plaintiff's condition allegedly not becoming worse is not based on substantial evidence. See Schatz, 220 F.3d at 949. Further, no reasonable person would conclude that because Plaintiff had worked for many years with IBS that she should have been able to continue working under these circumstances. See Wal-Mart, 479 F.3d at 542.

Fifth, to the extent Defendant contends that no doctor other than Dr. Kunkel opined that Plaintiff is unable to work, Dr. Ansari placed Plaintiff on sick leave in June 2004 because of her IBS. Also, Dr. Prather reported in November 2004 that Plaintiff is unable to work because of her condition. The court finds, therefore, that Defendant's conclusion in this regard is not based on substantial evidence and that no reasonable person could reach the conclusion that no doctor, other

than Dr. Kunkel suggested that Plaintiff is unable to work. See Wal-Mart, 479 F.3d at 542; Schatz, 220 F.3d at 949.

Sixth, to the extent Defendant found that Plaintiff is not entitled to benefits based on its assumption that she can wear *adult diapers to protect herself when she defecates upon herself*, the court finds such a conclusion itself is unreasonable. No reasonable person would assume that adult diapers would prevent a person with severe diarrhea from defecating on her clothing and herself. See Smith, 474 F.3d at 1035.

Seventh, to the extent that Defendant relied upon Plaintiff's not seeking or receiving medical treatment after she last saw Dr. Prather, Dr. Ansari reported in May and June 2004 that all therapeutic options for Plaintiff had been exhausted. Further, while the Plan states that to be entitled to benefits an individual must be under the "regular care of a physician," the Plan defines regular care of a physician as visiting a physician "as often as medically required." Thus, because treatment options had been exhausted, there was no reason for Plaintiff to seek further treatment from doctors. As such, the court finds that upon considering whether Plaintiff is disabled under the Plan no reasonable person would rely on Plaintiff's not seeing a physician for IBS after she last saw Dr. Prather. See Wal-Mart, 479 F.3d at 542. Further Defendant's decision in this regard is not supported by substantial evidence. See Schatz, 220 F.3d at 949. The court also finds that Defendant's interpretation of the Plan's language in regard to the requirement that a claimant be under the regular care of a physician conflicts with the plain language of the Plan; the Plan only requires that a claimant see a physician when it is medically necessitated or indicated. In Plaintiff's case further medical care was not necessitated or indicated. Defendant's interpretation of the Plan's language regarding the requirement that a claimant be under a physician's care is not consistent with the language of the Plan. See Smith, 474 F.3d at 1035.

Eighth, to the extent that Defendant relied on its conclusion that Plaintiff could take medication the court finds that no reasonable person would have reached this conclusion as Dr. Ansari reported in June 2004 that medication did not improve Plaintiff's symptoms and that Lotronex causes her to be constipated. See Wal-Mart, 479 F.3d at 542. Further Defendant's decision in this regard is not supported by substantial evidence. See Schatz, 220 F.3d at 949.

Ninth, although the Plan does not specify that Defendant require Plaintiff to submit to an examination by a doctor of Defendant's choice, the Plan permits Defendant to request that Plaintiff undergo such an examination. Defendant rejected the conclusion offered by her doctors that Plaintiff is unable to work; it rejected Plaintiff's description of her symptoms; and it acknowledged that there are no tests for IBS. However, Defendant did not invoke the provision of the Plan entitling it to request an examination by a doctor of Defendant's choice. Also, upon discrediting the opinions of Plaintiff's treating and examining doctors Defendant relied upon the opinion of two nurses whom it employed as consultants; they were not involved in Plaintiff's treatment nor did they physically examine her. Clearly, a consulting nurse is not as reliable a medical source as a treating or examining physician. See e.g., Lacrois v. Barnhart, 465 F.3d 881 (8th Cir. 2006) (holding that nurses, whether or not they are treating or consulting, are not an acceptable medical sources and that their opinions are not entitled to greater weight than treating doctors). Under such circumstances, the court finds it unreasonable that Defendant did not seek to have Plaintiff examined by a doctor of its choice.

For the reasons set forth above, the court finds that Defendant's denial of benefits to Plaintiff contradicts the Plan's clear language and that Defendant's interpretation of the Plan is inconsistent with the Plan's plain language and renders its language meaningless. See Finley, 957 F.2d at 621. Further, the court finds that a reasonable person could not have reached a conclusion that Plaintiff is able to perform the duties of her regular occupation based on the records before Defendant. See

<u>McKeehan</u>, 344 F.3d at 792. The court further finds that Defendant's decision to deny benefits to Plaintiff is not based on substantial evidence. <u>See</u> <u>Schatz</u>, 220 F.3d at 949. As such, the court finds that Defendant's determination that Plaintiff is not entitled to receive disability benefits under the Plan is unreasonable. Under such circumstances the court need not defer to Defendant's decision in this regard. <u>See</u> <u>Wall-Mart</u>, 479 F.3d at 541-42. Further, the court finds pursuant to the plain language of the Plan and substantial evidence in the administrative record that Plaintiff is totally disabled. <u>See</u> <u>Wal-Mart,</u> 479 F.3d at 542; <u>Smith</u>, 474 F.3d at 1035 <u>Schatz,</u> 220 F.3d at 949.

## CONCLUSION

The court finds, for the reasons articulated above, that Plaintiff is entitled to disability benefits under the Plan and that, therefore, summary judgment should be granted in favor of Plaintiff.

Accordingly,

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Defendant is **DENIED**; Doc. 22

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Plaintiff is **GRANTED**; Doc. 25.

**IT IS FURTHER ORDERED** that the parties shall submit briefs addressing the issues of pre-judgment interest and attorneys' fees no later than fourteen days after the date of this Memorandum Opinion;

**IT IS FURTHER ORDERED** that a separate Judgment incorporating this Memorandum Opinion shall issue this same date.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER

UNITED STATES MAGISTRATE JUDGE

Dated this <u>23rd</u> day of  April, 2007.